DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN, KIDWELL, HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIFER BRIGHT,<br><br>      Plaintiff,<br><br>v.<br><br>RIVER RUN HOSPITALITY, LLC d/b/a LE RITZ HOTEL & SUITES, and SHAWN GALER,<br><br>      Defendants. | Case No. 4:15-cv-00549-BLW<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Jennifer Bright, by and through her counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C. and as a cause of action against Defendants River Run Hospitality, LLC d/b/a Le Ritz Hotel & Suites and Shawn Galer, alleges and complains as follows:

### JURISDICTION AND VENUE

1.   This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Idaho Wage Claim Act, Idaho Code § 44-1501, *et seq.* and § 45-601, *et seq.*; the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5901, *et seq.*; and the common law of the state of Idaho.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

3.      Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## PARTIES

4.      Plaintiff Jennifer Bright ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Idaho Falls, Idaho.

5.      Defendant River Run Hospitality LLC d/b/a Le Ritz Hotel & Suites ("Le Ritz") is an Idaho limited liability company with its principal place of business located in Idaho Falls, Idaho.

6.      Defendant Shawn Galer ("Galer") is a male citizen and resident of the United States of America, who resides in Idaho Falls, Idaho.

7.      Le Ritz and Galer are referred to collectively hereinafter as "Defendants."

8.      At all times material to this Complaint, Le Ritz was an employer engaged in interstate commerce, bringing Le Ritz within the ambit of Idaho Code § 44-1501, *et seq.*, § 45-601, *et seq.,* and 29 U.S.C. § 203.

9.      Further, at all times material to this Complaint, Le Ritz was an employer engaged in an industry affecting commerce that had 15 or more employees, bringing Le Ritz within the ambit of the ADAAA and the IHRA.

## FACTS COMMON TO ALL COUNTS

10.     Plaintiff realleges and incorporates by reference paragraphs 1 through 9 as though fully set forth herein.

11.     Galer owns and operates Le Ritz Hotel & Suites, a hotel located in Idaho Falls, Idaho.

12.     Plaintiff began working for Defendants in June 2011 as a front desk agent. She was promoted to front desk manager in October 2011.

13.     Because of her outstanding performance as a front desk agent, in or about March 2012, Plaintiff was promoted to sales manager.

14.     When Defendants promoted Plaintiff to sales manager, and at all times pertinent to the claims herein, Defendants agreed to pay Plaintiff a regular salary of $1,333.33 bi-monthly, or $31,992.00 annually, plus bonuses.

15.     When Plaintiff was promoted to sales manager, Plaintiff was at all times classified as an exempt employee and paid no overtime compensation. However, she was required to clock in and out and was paid as if she were an hourly employee, particularly when she worked less than 60 hours a week.

16.     When Plaintiff was promoted to sales manager, Plaintiff and Defendants entered into a written agreement pursuant to which Plaintiff was to be paid bonuses based upon her sales. Such bonuses were not discretionary, but directly related to the amount of the sales volume.

17.     Pursuant to Le Ritz's employee handbook, Plaintiff was also entitled to paid time off ("PTO"), which she began to accumulate at a rate of five days per year from her date of hire, and which was to increase incrementally based upon her years of service working for Defendants.  Plaintiff was never permitted to utilize her PTO, and Defendants never increased the amount of PTO to which Plaintiff was entitled, even though she was entitled to additional PTO based upon her years of service.

18.     In or about August 2012, Le Ritz's general manager, Kelly Teeples, resigned after a dispute arose between her and Galer.

19.    Rather than hire another general manager, Defendants required Plaintiff to perform the general manager duties in addition to Plaintiff's duties as sales manager with no increase in her pay. Further, Defendants refused to properly staff the hotel, requiring Plaintiff to perform substantial duties outside her normal duties.

20.    Plaintiff regularly worked a minimum of 60 hours per week, and often worked more. Defendants also required Plaintiff to be on-call 24 hours a day, seven days a week, with no additional compensation for her on-call time.

21.    While on-call, Plaintiff had to stay within a short drive of the hotel in order for her to address any potential issues that came up.  Plaintiff would often be called into work in the middle of the night, when she was at movies, when she was at her children's activities, etc.

22.    As a result of Plaintiff's responsibilities, she has worked the front desk, cleaned rooms, cooked breakfast, and performed pool maintenance in addition to her administrative tasks.

23.    Defendants also required that Plaintiff work holidays to avoid paying other employees overtime compensation.

24.    Plaintiff's work performance was excellent, and Plaintiff regularly received positive feedback about her work performance from co-workers, guests, and Galer.

25.    In December 2013, Plaintiff began to notice that when she worked in her office, she would feel dizzy, nauseated, fatigued, get severe headaches and struggled to focus.  Plaintiff's symptoms continued for at least a couple of months.

26.    Plaintiff later learned in March 2015 that a malfunctioning mainline from the pool room was leaking carbon monoxide gas into Plaintiff's office, causing her symptoms.  Plaintiff also learned that when Defendants' maintenance manager had brought up the carbon monoxide leak in Plaintiff's office with Galer, Galer's response was that Plaintiff should just "put on

[her] big girl panties" and deal with it. Galer never disclosed to Plaintiff that she had been breathing carbon monoxide in her office for weeks, even though he knew she had been experiencing numerous health problems at that time.

27. Although Defendants paid Plaintiff her bonuses pursuant to the bonus agreement in 2013, Defendants failed to pay Plaintiff her bonuses in 2014 and 2015.

28. Defendants improperly docked Plaintiff's pay by reducing her salary on a number of occasions.

29. In or about mid-November, 2012, Plaintiff needed to have surgery.  Plaintiff scheduled her surgery for a Friday, and worked over 40 hours during the days prior to her surgery. However, Defendants docked Plaintiff's salary by half for that week.

30. In or about February 2013, Plaintiff's grandmother was very ill.  Plaintiff worked on Sunday, Monday, Tuesday, and Wednesday, for a total of at least 40 hours for the week, and took Thursday, Friday and Saturday off to be with her grandmother.  Despite the fact that Plaintiff had already worked a 40 hour workweek before she took time off, Defendants docked Plaintiff's pay for that week by paying her only half of her salary.

31. In or about mid-June, 2014, Plaintiff had some medical issues, and had to take one day off. Although Plaintiff had worked over 40 hours during the week, Defendants docked Plaintiff's salary by half for that week.

32. Plaintiff has a severe latex allergy which results in Plaintiff's airways closing and significant swelling throughout her entire body if she is exposed to latex.  Because Plaintiff's allergy to latex is to severe, she has to carry an epi-pen with her at all times.

33. There were a number of occasions on which Galer insisted on painting various areas of the hotel with latex paint while Plaintiff was at work.

34.  Plaintiff made Galer aware that she was severely allergic to latex and on those occasions when painting was planned asked if she could take the day off and/or work from home. Galer would not allow her to do so, and told her she should just stay in her office at work.

35.  There were a number of occasions where Galer directed painting to occur, knowing that Plaintiff would be at work, and Galer did nothing to inform or warn Plaintiff that the painting would occur.

36.  Plaintiff attempted to stay at work, but on the occasions when she did, she had severe allergic reactions. This happened on three occasions, and on each occasion Plaintiff had to use an epi-pen to stop the reaction. Plaintiff required assistance from coworkers to administer the epi-pen, to exit the building, and get to her car.

37.  The most recent incident involving Plaintiff having a severe allergic reaction to latex paint was in February 2015. On this occasion Galer failed to inform or warn Plaintiff painting was scheduled.

38.  On or about the morning of March 7, 2015, Plaintiff was called in to address some issues at work on a Saturday. While at work, it was reported to Plaintiff that some girls were being unruly in the pool area. Plaintiff responded to address the issue in the pool area of the hotel when she slipped and fell, landing on her face and severely injuring her jaw.

39.  Plaintiff continued to try and work because of the items that needed to be done, but the pain became unbearable.

40.  On or about March 8, 2015, Plaintiff went to Community Care in Idaho Falls for treatment. One of the questions asked on Community Care's intake forms was whether the injury for which treatment was sought was the result of a workplace injury. Plaintiff responded that the injury to her jaw was the result of a workplace injury.

41.     Defendants did not fill out or submit a First Report of Injury form to the Idaho State Insurance Fund until March 16, 2015, nine days after Plaintiff's injury. On information and belief, Defendants only filled out the First Report of Injury after the State Insurance Fund contacted Galer as a result of Community Care submitting a request for payment to the State Insurance Fund.

42.     Galer made numerous false and contradictory statements to the State Insurance Fund regarding Plaintiff's injury, including that she never worked on Saturdays, that she had resigned on March 6, 2015, the day before the injury, that he offered Plaintiff light duty work, that Plaintiff had injured her jaw away from the job site, and that there were no video cameras in the pool/hot tub area which would have captured the fall precipitating the injury, among other things.

43.     Galer also coerced one of Le Ritz's other employees to write and sign a written statement stating that Plaintiff had been complaining about problems with her jaw before the accident.

44.     Defendants subsequently docked Plaintiff's pay completely, paying her no wages for the entire week prior to her injury.  Defendants docked Plaintiff's pay despite the fact that Plaintiff worked a full schedule during that week.

45.     Plaintiff's doctors did not release Plaintiff to return to work subsequent to her injury. Plaintiff could not open her mouth more than a centimeter or two, and had extreme difficulty speaking.  Plaintiff has not been able to eat solid food since the injury.  Plaintiff has already had two surgeries to attempt to correct the damage to her jaw.

46.     Plaintiff tried on numerous occasions to speak with Galer regarding the plan going forward and Plaintiff's schedule, given that her doctors placed her on medical leave.  Plaintiff texted

and called Galer numerous times.  Galer has not returned any of Plaintiff's texts or phone calls.

47.    Four days after Plaintiff's injury, Defendants posted Plaintiff's position as available. Defendants also boxed up all of Plaintiff's personal belongings.

48.    Defendants have paid Plaintiff no wages since the week prior to her injury.

49.    Defendants discharged Plaintiff on or about March 11, 2015.

50.    Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 6, 2015, which was dually filed with the Idaho Human Rights Commission. On or about December 21, 2015, the EEOC issued Plaintiff a Notice of Right to Sue Letter.

**COUNT ONE**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(as against Le Ritz and Galer)**

51.    Plaintiff realleges and incorporates by reference paragraphs 1 through 50 above, as though fully incorporated herein.

52.    Le Ritz is an employer covered by the overtime requirements set forth in the Fair Labor Standards Act ("FLSA").

53.    As an employee of Le Ritz, Plaintiff worked in excess of the maximum weekly hours permitted under the FLSA but was not paid ovetime for those excess hours because she was erroneously classified as an exempt employee.

54.    Plaintiff's substantial duties in performing manual tasks precluded her from being categorized as exempt.

55.    Defendants withheld pay from Plaintiff's salary on numerous occasions for reasons not permitted under the FLSA.

56.   Defendants also failed to pay Plaintiff her bonus pay pursuant to the written bonus agreement.

57.   Defendants additionally failed to provide Plaintiff with the PTO to which she was entitled.

58.   Because Defendants improperly withheld pay from Plaintiff's salary, Defendants' method of compensating Plaintiff did not qualify Plaintiff for any exemption from the wage and overtime obligations imposed by the FLSA.

59.   Throughout Plaintiff's employment, Defendants have known that Defendants' method of compensating Plaintiff does not render Plaintiff exempt from the wage and overtime obligations imposed by the FLSA.  Defendants have also known that it is required to pay hourly wages to Plaintiff for hours worked over 40 hours per week.  Defendants have also known that it is required to pay overtime at the rate of time and a half to Plaintiff for hours worked in any week over and above 40 hours.  In spite of such knowledge, Defendants wilfully withheld and failed to pay the wages, bonuses, PTO, and overtime compensation to which Plaintiff is entitled.

60.   Pursuant to the FLSA, Plaintiff is entitled to compensation for the wages withheld by Defendants from Plaintiff's salary, bonuses, and PTO which she rightfully accumulated, in addition to unpaid overtime at a rate of one and one half times Plaintiff's equivalent hourly wage.

61.   Because Defendants' failure to pay overtime was willful pursuant to 28 U.S.C. § 255(a), Plaintiff is entitled to her unpaid wages, bonuses, PTO, and overtime dating back three years.

62.   The exact amount of unpaid compensation and overtime pay Defendants have failed to pay to Plaintiff is unknown at this time, as the records necessary to make such precise calculations are in possession of Defendants.

63.     The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment.  Plaintiff is entitled to review the records of her hours worked to determine the exact amount of overtime and unpaid wages owed by Defendants.

64.     Defendants' failure to pay Plaintiff her wages due, bonuses, PTO, and overtime wages is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA.  Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to liquidated damages in an amount equal to the compensation and overtime which she was not paid.

### COUNT TWO
### VIOLATION OF THE IDAHO WAGE CLAIM ACT
#### (as against Le Ritz and Galer)

65.     Plaintiff realleges and incorporates by reference paragraphs 1 through 64 above, as though fully incorporated herein.

66.     Defendants failed to pay Plaintiff her wages due for hours worked, bonuses, PTO, and overtime compensation to which she was entitled.

67.     Defendants' failure to pay Plaintiff her wages due for hours worked, her bonuses, PTO, and overtime compensation to which she was entitled is a violation of the Idaho Wage Claim Act, Idaho Code § 44-1501, *et seq*. and § 45-601, *et seq*.

68.     Plaintiff is entitled to recover from Defendants the amount of unpaid wages, bonuses, PTO, and overtime due and owing plus penalties, or damages in the amount of three times the amount of unpaid wages, bonuses, PTO, and overtime compensation due and owing, whichever is greater.

**COUNT THREE**
**WRONGFUL TERMINATION IN CONTRAVENTION OF PUBLIC POLICY**
**(as against Le Ritz)**

69.   Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above, as though fully incorporated herein.

70.   Plaintiff engaged in a protected activity when she reported her work-related injury and/or disability, and sought medical treatment for her work-related injury.

71.   Le Ritz terminated Plaintiff as a result of Plaintiff reporting her work-related injury and seeking medical assistance for her work-related injury.

72.   Le Ritz violated the public policy of the State of Idaho by its retaliatory actions.

73.   As a direct and proximate result of Le Ritz's actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment based job opportunities.  Plaintiff is thereby entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to her.

**COUNT FOUR**
**ASSAULT AND BATTERY**
**(as against Le Ritz and Galer)**

74.   Plaintiff realleges and incorporates by reference paragraphs 1 through 73 above, as though fully incorporated herein.

75.   Defendants directed painting to be done at the hotel on numerous occasions utilizing a paint spray gun, causing latex paint particles to become airborne.

76.   Defendants knew that Plaintiff was severely allergic to latex, yet continued to engage in actions causing latex particles to physically contact Plaintiff's person, including her skin and lungs.

77. Defendants' actions caused latex paint particles to physically contact Plaintiff's person, including her skin and lungs.

78. The physical contact of latex paint particles with Plaintiff's person was harmful and without Plaintiff's consent.  In fact, Plaintiff informed Defendants on numerous occasions that she objected to being present when Defendants engaged in painting activities in the hotel facilities because such activities would result in her having a severe allergic reaction due to her being exposed to airborne particles of latex.

79. The physical contact of latex paint particles with Plaintiff's person was unlawful, harmful, and offensive.

80. The physical contact of latex paint particles with Plaintiff's person occurred while Plaintiff was performing her work duties for Defendants and as a result of Plaintiff performing her work duties for Defendants.

81. Plaintiff suffered severe allergic reactions due to Defendants causing the latex paint particles to come into contact with Plaintiff's person, causing severe swelling in Plaintiff, causing Plaintiff's airways to nearly close completely, and requiring Plaintiff to use epi-pens to prevent a fatal allergic reaction to the latex paint particles.

82. Defendants are liable to Plaintiff for the assaults and batteries committed against Plaintiff while she was on the job because Defendants were aware of Plaintiff's severe allergy to latex, refused to delay painting until a day when Plaintiff was not present at work, and refused to allow Plaintiff to work from home in order to avoid exposure.

83. Defendants' conduct in engaging in painting activities with latex paint while Plaintiff was at work and refusing to allow Plaintiff to work from home so as to avoid exposure to the

airborne latex paint particles, all the while knowing that Plaintiff had a severe latex allergy, constituted willful or unprovoked physical aggression by Defendants.

84.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer physical injury, medical expenses and costs, as well as emotional distress consisting of outrage, shock and humiliation, reasonably occurring and likely to occur based upon the assault and battery she experienced.  Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

## COUNT FIVE
## AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
### (Failure to Accommodate)
### (as against Le Ritz)

85.   Plaintiff realleges and incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86.   Plaintiff was disabled within the meaning of the ADAAA because she was severely allergic to latex.

87.   Plaintiff's latex allergy substantially limited Plaintiff's major life activities, including her ability to breathe, concentrate and work.

88.   Plaintiff was a qualified individual able to perform the essential functions of her job with reasonable accommodation.

89.   Even after Le Ritz learned that Plaintiff was severely allergic to latex, Le Ritz continued to require Plaintiff to work while painters sprayed latex paint.

90.   Plaintiff requested a reasonable accommodation from Le Ritz in apprising her of when the painters would be painting so that she could rearrange her schedule to not be at work while they were painting and/or to perform certain administrative functions from home.

91.    Le Ritz refused to grant Plaintiff any accommodation and continued to require Plaintiff to work in her office, even though Le Ritz could have easily accommodated the restrictions.

92.    Because Le Ritz would not allow Plaintiff to work from home, Plaintiff performed her job duties from her office with the door closed. However, Plaintiff still suffered an allergic reaction three times in one week. Plaintiff's allergic reaction caused swelling and caused her airways to begin to close because of her exposure to latex, necessitating the use of her epi-pen.

93.    Le Ritz failed to engage Plaintiff in any interactive process or evaluate whether accommodations could be made to allow her to perform her position.

94.    Plaintiff suffered adverse actions based upon her disability in that Defendants refused to provide reasonable accommodations to Plaintiff, required Plaintiff to attempt to work through severe allergic reactions, and reduced her paycheck.

95.    As a direct and proximate result of Defendants' actions and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job-related opportunities.  Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

96.    Le Ritz's conduct was malicious and done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT SIX
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Failure to Accommodate)
### (as against Le Ritz)

97.    Plaintiff realleges and incorporates by reference paragraphs 1 through 96 as though fully set forth herein.

98.   Le Ritz violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff by failing to accommodate Plaintiff's latex allergy.

99.   As a direct and proximate result of Le Ritz's actions and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job-related opportunities.   Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

## COUNT SEVEN
## AMERICAN WITH DISABILITIES ACT AMENDMENTS ACT
### (Failure to Accommodate)
### (as against Le Ritz)

100.   Plaintiff realleges and incorporates by reference paragraphs 1 through 99 above, as though fully incorporated herein.

101.   Plaintiff was disabled within the meaning of the ADAAA because she suffered from a severe injury to her musculoskeletal system, including damage to her skull and severe Temporomandibular Joint Disorder ("TMD"), in addition to severe headaches as a result of a workplace injury.

102.   Plaintiff's TMJ substantially limited Plaintiff's major life activities, including her ability to work, talk, and eat.

103.   Plaintiff required time off from work to address complications from the disability arising from her work place injury.

104.   Plaintiff was a qualified individual able to perform the essential functions of her job with reasonable accommodation.

105.   Le Ritz was aware of Plaintiff's need for time off from work to address her disability issues.

106.    Plaintiff requested a reasonable accommodation from Le Ritz to take time off from work to address her medical issues associated with her disabilities.

107.    Le Ritz refused to respond to Plaintiff's requests for accommodations.

108.    Plaintiff suffered adverse employment actions based upon her disabilities in that Le Ritz refused to provide reasonable accommodations to Plaintiff, and ultimately terminated her employment.

109.    As a direct and proximate result of Le Ritz's actions and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job-related opportunities. Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

## COUNT EIGHT
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Failure to Accommodate)
### (as against Le Ritz)

110.    Plaintiff realleges and incorporates by reference paragraphs 1 through 109 above, as though fully incorporated herein.

111.    Le Ritz violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff by failing to accommodate Plaintiff's disabilities arising from her work place injury.

112.    As a direct and proximate result of Le Ritz's action and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

**COUNT NINE**
**AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT**
**(disparate treatment)**
**(a against Le Ritz)**

113.    Plaintiff realleges and incorporates by reference paragraphs 1 through 112 above, as though fully incorporated herein.

114.    At all times hereto, Plaintiff had disabilities as defined by the ADAAA.

115.    Plaintiff's disabilities were a latex allergy, damage to her musculoskeletal system, including severe TMD and damage to her skull, and severe headaches all as a result of a workplace injury.

116.    Plaintiff's disabilities substantially limited her major life activities, including the ability to breathe, concentrate, work, eat and talk.

117.    Plaintiff was a qualified individual under the ADAAA, i.e., an individual who, with or without reasonable accommodation, could perform the essential functions of the position she held.

118.    Le Ritz took adverse action against Plaintiff based upon one or more of her disabilities, including docking Plaintiff's pay and terminating Plaintiff's employment.

119.    As a direct and proximate result of Le Ritz's actions and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earrings and other employment benefits and job related opportunities.  Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

120.    Le Ritz's conduct was malicious and done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981(a).

## COUNT TEN
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (disparate treatment)
### (as against Le Ritz)

121.   Plaintiff realleges and incorporates by reference paragraphs 1 through 120 above, as though fully incorporated herein.

122.   Le Ritz violated the IHRA, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff based upon her disabilities.

123.   As a direct and proximate result of Le Ritz's actions and/or failures to act, Plaintiff has suffered and will continue to suffer a loss of earrings and other employment benefits and job related opportunities.  Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

## COUNT ELEVEN
## ASSAULT AND BATTERY

124.   Plaintiff realleges and incorporates by reference paragraphs 1 through 123 above, as though fully incorporated herein.

125.   The mainline from the pool in the hotel traveled above Plaintiff's office.

126.   The mainline carried toxic carbon monoxide gas from the pool pump and heater.

127.   The mainline had a leak over Plaintiff's office.

128.   The leak in the mainline caused carbon monoxide gas to enter Plaintiff's office and come into contact with Plaintiff's lungs while she worked in her office.

129.   Defendants knew about the leak in the mainline causing carbon monoxide gas to enter Plaintiff's office while Plaintiff worked in her office.

130.   Defendants' actions caused carbon monoxide gas to physically contact Plaintiff's person, including her lungs.

131.    The physical contact of carbon monoxide with Plaintiff's person was harmful and without Plaintiff's consent.

132.    The physical contact of carbon monoxide with Plaintiff's person was unlawful, harmful, and offensive.

133.    The physical contact of carbon monoxide with Plaintiff's person occurred while Plaintiff was performing her work duties for Defendants and as a result of Plaintiff performing her work duties for Defendants.

134.    Plaintiff experienced dizziness, nausea, fatigue, headaches, and focus problems due to Defendants causing carbon monoxide to come into contact with Plaintiff's person.

135.    Defendants are liable to Plaintiff for the assault and batteries committed against Plaintiff while she was on the job because Defendants were aware of the carbon monoxide leak and that Plaintiff was experiencing dizziness, nausea, fatigue, headaches, and focus problems, but continued to force Plaintiff to be exposed to carbon monoxide and did nothing to inform Plaintiff of her exposure or remove her from her office where the leak was occurring.

136.    Defendants' actions toward Plaintiff constituted willful and unprovoked aggression by Defendants.

137.    As a direct and proximate result of Defendants' actions and/or failure to act Plaintiff has suffered and will continue to suffer physical injury, medical expenses and costs, as well as emotional distress consisting of outrage, shock and humiliation, reasonably occurring and likely to occur based upon the assault and battery she experienced. Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available.

**ATTORNEY'S FEES**

138.    As a further direct and proximate result of Defendants' actions and/or failures to act, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be required to be paid by Defendant pursuant to Idaho Code § 12-120, §12-121 and § 45-615; 29 U.S.C. § 216(b); and 42 U.S.C. § 12205.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

1.    For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2.    For punitive damages;

3.    For attorney's fees pursuant to statute and costs of suit; and

4.    For such other and further relief as the Court deems just and proper.

Dated this 12th day of February, 2016.


_____/s/_____
DeAnne Casperson
Holden, Kidwell, Hahn & Crapo, P.L.L.C.


G:\WPDATA\DC\18440 Bright\Pleadings\Complaint.AMEND.wpd:dg